UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| STEPHEN F.P. CIOLINO, Plaintiff, v. J. VINE, *et al.*, Defendants. | Case No. 3:25-cv-00634-MMD-CLB<br>SCREENING ORDER |

## I. SUMMARY

*Pro se* Plaintiff Stephen F.P. Ciolino, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC") at Northern Nevada Correctional Center ("NNCC"), submitted a civil rights complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1-1 ("Complaint")) and an application to proceed *in forma pauperis* ("IFP") (ECF Nos. 1, 5). Plaintiff also filed a Motion for Preliminary Injunction (ECF No. 8 ("PI Motion")) and a Motion to Correct PI Motion (ECF No. 9). The Court will grant Plaintiff's IFP application as it demonstrates he is unable to prepay the filing fee. (ECF No. 5.) The Court now screens Plaintiff's Complaint under 28 U.S.C. § 1915A and addresses the PI Motion.

## II. SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id*. §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential

elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *See id*.

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id*. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Finally, all or part of a complaint filed by an incarcerated person may be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*, fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**III. SCREENING OF COMPLAINT**

Plaintiff sues Defendants Nevada Attorney General Aaron Ford, Deputy Attorney General Leo T. Hendges, NDOC Inspector General Doe, and the following NNCC staff: Warden John Henley, Associate Warden Robert Hartman, and law library supervisors Martha Simas and J. Vine for events that occurred at NNCC. (ECF No. 1-1 at 2-3.) He brings three claims and seeks monetary damages and declaratory and injunctive relief. (*Id*. at 3-13.)

Plaintiff alleges the following. In January 2025, he made copies of medical documents for an ongoing civil-rights case: *Ciolino v. State of Nevada Ex Rel et al.*, Case No. 2:23-cv-00030-ART-NJK (D. Nev.). He filled out a brass slip and was present when his discovery was placed in an envelope and sealed for mailing. Days later he was summoned to the law library and given notice of a problem with his outgoing mail. The envelope was now empty, the brass slips voided, and the request for copies was

"tampered with." (*Id*. at 5.) On January 17, 2025, Plaintiff submitted to Vine a request to e-file a motion in the ongoing case. His motion complained that Simas, Hartman, Vine, and Hendges were involved in interfering with his access to the courts, including tampering with outgoing legal mail, delays in e-filing, and unauthorized viewing of his medical records. In March 2025, Plaintiff was told that he was not allowed to go to the law library and must ask the law library assistants when they came to the unit to collect filings. Simas denied his supply request for two legal boxes, which he needed because his were damaged. In April, Plaintiff was allowed to go to the law library. In May 2025, Plaintiff filed a grievance against Vine, Simas, and Hartman. Hartman denied the grievance at every level—despite an administrative regulation barring a staff member who is the subject of the grievance from sustaining or denying it.

In October 2025, Plaintiff was not allowed to e-file and had to file his opposition to summary judgment in the ongoing case via U.S. mail. Plaintiff discovered that Vine was not giving him documents that had been filed in the case from September 8-October 28, 2025. Plaintiff wrote letters to Ford, Henley and the Inspector General about not receiving filings and lack of access to e-filing and got no answer. All Defendants conspired to interfere with his access to mail. Based on this set of allegations Plaintiff states claims of interference with both his access to the courts (Claim 1) and the mail (Claim 2), as well as retaliation (Claim 3).

### A. Claim 1: First Amendment Access to Courts

Under the First and Fourteenth Amendments, prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). This right, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. It is this "capability, rather than the capability

of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Id*. at 356-57.

To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. *See id*. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id*. at 348. Delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Id*. at 362. The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. *See id*. at 353 n.3, 354-55.

Plaintiff fails to state a claim that Defendants interfered with his access to court, causing actual injury. He claims his efforts to file a motion for an order for prison staff to follow the law were thwarted in the first few months of 2025. But the Court takes judicial notice of its docket and Plaintiff filed two such motions on January 24 and 27. *See Ciolino v. State of Nevada Ex Rel et al.*, Case No. 2:23-cv-00030-ART-NJK (D. Nev.) (ECF Nos. 73, 74). Additionally, Plaintiff filed a motion for leave to file via U.S. mail, *see id*. at ECF No. 75; a motion for contempt sanctions, *see id*. at ECF No. 82; and two motions regarding new information related to civil contempt, *see id*. at ECF Nos. 87, 88. So Plaintiff successfully filed six motions in the time period that he alleges that he was prevented from litigating his case. He presented all of the allegations in this Complaint in those motions. The Court addressed those motions in its order dated March 31, 2025. *See id.* at ECF No. 93.

Plaintiff alleges that in October 2025, he was not allowed to e-file and had to file his opposition to summary judgment in the ongoing case via U.S. mail. He is correct that

his 300-page opposition with exhibits was filed via mail.[1] It was filed within the briefing deadline on October 24. *See id*. at ECF No. 111. Plaintiff also claims that prison staff did not give him documents that were filed and served on him in September and October. But the only documents filed in that timeframe were filed by Plaintiff. *See id*. at ECF Nos. 111, 112. His claim that any Defendant interfered with his ability to litigate the case, causing actual injury, is belied by the record. The Court, therefore, denies Claim 1 with prejudice and without leave to amend, as amendment would be futile.

**B. Claim 2: First Amendment Right to Send and Receive Mail**

Prisoners generally have a First Amendment right to send and receive mail. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). Regulations concerning outgoing mail must more closely fit the interest served than regulations concerning incoming mail. *See id.* at 265. Prison regulations concerning outgoing mail must further "important or substantial governmental interest[s] unrelated to the suppression of expression" and must be generally necessary to protect legitimate government interests. *Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974); *see also Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) ("We acknowledge today that the logic of our analyses in *Martinez* and *Turner* requires that *Martinez* be limited to regulations concerning outgoing correspondence."). The Court analyzes prison regulations concerning incoming mail under the following factors: (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there is an "absence of ready alternatives." *Turner v. Safley*, 482 U.S. 78, 89-91 (1987) (internal quotation marks omitted); *see also Thornburgh*, 490 U.S. at 411-13.

///

[1]The Court draws the common-sense inference that a 300-page filing may have been onerous or logistically difficult for the prison law library staff to file electronically.

Plaintiff fails to state a colorable claim of interference with his right to send and receive mail. Claim 2 is based on the same allegations as Claim 1. As the Court explained above, Plaintiff's claims that Vine did not give him documents that were filed in September-October 2025 and that he suffered actual injury when he had to file his opposition to summary judgment by mail are belied by the record. The Court, therefore, dismisses Claim 2 with prejudice and without leave to amend, as amendment would be futile.

**C. Claim 3: First Amendment Retaliation**

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id*.

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68. Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *See id*. at 568-69. A plaintiff who fails to allege a chilling effect may still state a claim if he alleges that he suffered some other harm that is more than minimal. *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). More than minimum harms include the filing of a false disciplinary charge against a prisoner, placing him in administrative segregation, or interfering with his parole hearing. *See id*. at 1115.

///

With Claim 3, based on the same allegations as Claims 1 and 2, Plaintiff again fails to state a colorable claim. Plaintiff alleges that his First Amendment rights were chilled by Defendants' interference with his ongoing litigation. Plaintiff's claim that he was prevented from litigating the case and suffered actual injury are belied by the record. The Court dismisses Claim 3 with prejudice and without leave to amend, as amendment would be futile.

The Complaint, therefore, is dismissed in its entirety with prejudice and without leave to amend.

**IV. MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff filed a PI Motion and a Motion to Correct the PI Motion. (ECF Nos. 8, 9.) Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). Furthermore, under the PLRA, preliminary injunctive relief must be "narrowly drawn," must "extend no further than necessary to correct the harm," and must be "the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). "A court's equitable power lies only over the merits of the case or controversy before it. When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015).

In both motions, Plaintiff asks the Court to enjoin Defendants from the alleged interference that is the subject of the Complaint, as well as from alleged interference with "daily programs—school—job—accessing the Court, medical access, etc." (ECF No. 9 at 3.) The Court does not have the authority to issue an injunction based on claims not pled in the Complaint. Here, the Court dismisses the Complaint with prejudice for failure to

state any claims for which relief may be granted. Accordingly, Plaintiff fails to demonstrate likelihood of success on the merits. Moreover, without a Complaint, the Court does not have authority to issue an injunction. Plaintiff's efforts to cure any defects in the PI Motion are therefore futile. (ECF No. 9.) The Court necessarily denies the two motions. (ECF Nos. 8, 9.)

**V. CONCLUSION**

It is therefore ordered that Plaintiff's incomplete initial IFP application (ECF No. 1) is denied as moot.

It is further ordered that Plaintiff's completed IFP application (ECF No. 5) is granted. Plaintiff will not be required to pay an initial installment fee. Nevertheless, the full filing fee will still be due under 28 U.S.C. § 1915, even though this action is dismissed and is otherwise unsuccessful.

It is further ordered that, under 28 U.S.C. § 1915, NDOC will forward payments from the account of Stephen F.P. Ciolino, #84670 to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits (in months that the account exceeds $10.00) until the full $350 filing fee has been paid for this action. The Clerk of the Court will send a copy of this order to the Finance Division of the Clerk's Office. The Clerk will also send a copy of this order to the Chief of Inmate Services for NDOC at formapauperis@doc.nv.gov.

It is further ordered that the Clerk of Court electronically file the Complaint (ECF No. 1-1).

It is further ordered that the Complaint is dismissed with prejudice for failure to state a claim and without leave to amend.

It is further ordered that Plaintiff's Motion for Preliminary Injunction and Motion to Correct the Motion for Preliminary Injunction (ECF Nos. 8, 9) are denied.

It is further ordered that Plaintiff's Motion for Production of Documents (ECF No. 10) is denied as moot.

///

It is further ordered that the Clerk of the Court close the case and enter judgment accordingly.

It is further ordered that this Court certifies that any IFP appeal from this order would not be taken "in good faith" under 28 U.S.C. § 1915(a)(3).

DATED THIS 6th Day of August 2026

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE